SK:MWG
F. #2019R01511

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 347-791-4447, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | **TO BE FILED UNDER SEAL**<br><br>SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION<br><br>Case No. 20-MC-641 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, KIERAN KEENAGHAN, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under 18 U.S.C. § 2703(c)(1)(A) for a search warrant for information associated with a certain cellular telephone assigned call number 347-791-4447 (the "SUBJECT PHONE"), that is stored at premises controlled by T-Mobile US, Inc., a wireless telephone service provider headquartered in Parsippany, New Jersey (the "Provider").  The information to be searched is described below and in Attachment A.  The search warrant would require the Provider to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Detective and Task Force Officer assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the New York City Police Department ("NYPD") Joint Robbery Task Force.  I have been a Detective with the NYPD since 1999.  I have been a Task Force Officer with the ATF/NYPD Joint Robbery Task Force since 2014.  I have been involved in the investigations of numerous cases involving Hobbs Act robberies and related firearms offenses.  Through my training, education and experience, I have become familiar with the manner in which evidence of robberies are commonly stored and the manner in which fugitives hide, as well as the uses and capabilities of cellular phones.  I have also participated in the execution of search warrants involving evidence of robberies, including searches of electronic devices.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1951 (attempted Hobbs Act robbery) and 924(c) (possessing and brandishing firearms during crimes of violence) have been committed by THURMEN RISHER, DARNELL LEONARD, MARQUIS AIKEN, and other, unidentified individuals.  There is also probable cause to believe that MARQUIS AIKEN is the user of the SUBJECT PHONE.  There is also probable cause to search the information pertaining to the SUBJECT PHONE, further described in Attachment A, for evidence, instrumentalities, or fruits of these crimes, as further described in Attachment B.

## PROBABLE CAUSE

5.      The United States, including the ATF, is conducting a criminal investigation of THURMEN RISHER ("RISHER"), DARNELL LEONARD ("LEONARD"), MARQUIS AIKEN ("AIKEN"), and other individuals regarding a pattern of armed robberies that occurred in Brooklyn and Queens, New York and elsewhere in or about and between September 2019 and January 2020.

6.      The following robberies involving RISHER, LEONARD, and other individuals occurred in or about and between September 2019 and October 2019:

> a.   On or about September 19, 2019, at approximately 1:00 p.m., an armed robbery occurred at a laundromat located at 673 Bushwick Avenue, Brooklyn, New York;

> b.   On or about September 23, 2019, at approximately 3:00 p.m., an armed robbery occurred at a Metro PCS store located at 1805 Fulton Street, Brooklyn, New York;

> c.   On or about September 27, 2019, at approximately 1:30 p.m., an armed robbery occurred at a T-Mobile store located at 5002 Kings Highway, Brooklyn, New York;

> d.   On or about October 5, 2019, at approximately 2:50 p.m., an armed robbery occurred at a jewelry store located at 28 Graham Avenue, Brooklyn, New York;

> e.   On or about October 19, 2019, at approximately 12:22 p.m., an armed robbery occurred at a jewelry store located at 9 Hanover Place, Brooklyn, New York;

    f.   On or about October 21, 2019, at approximately 10:00 a.m., an armed robbery occurred at a jewelry store located at 863 Central Avenue, Dover, New Hampshire.

7.    I have reviewed video surveillance depicting the above-described robberies.  Video surveillance shows LEONARD at each of the above-described robberies and RISHER at the above-described robbery on September 19, 2019.

8.    According to historical cell-site data, RISHER's cellular telephone was located within close proximity to each of the above-described robberies near the times of each above-described robbery, and LEONARD's cellular telephone was located within close proximity to the above-described robberies on September 23, October 5, October 19 and October 21, near the times of each robbery.[1]

9.    RISHER has been charged with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and LEONARD has been charged with one count of Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a).

10.    On January 14, 2020, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, Eastern District of New York, issued an arrest warrant for LEONARD.

---

[1] There is no historical cell-site data for LEONARD's cellular telephone at the times of the above-described robberies on September 19 and September 27; however, historical cell-site data for LEONARD's cellular telephone places his cellular telephone near the locations of those robberies approximately one hour after each robbery, which is consistent with LEONARD's presence at those robberies.

11.     Law enforcement agents arrested LEONARD seven days later on January 21, 2020, while he was in the midst of committing an additional robbery of a jewelry store at the corner of 37th Avenue and 74th Street in Queens, New York.  LEONARD was wearing a neoprene mask, sunglasses, and a black hooded sweatshirt, and he was attempting to enter a black Nissan Maxima, New York license plate HFD6301 (the "Vehicle").  The Vehicle was parked near the corner of 37th Avenue and 74th Street with the engine running and with another individual in the driver's seat.  As LEONARD attempted to enter the Vehicle, law enforcement agents stopped and arrested LEONARD.   At the time of his arrest, LEONARD had an empty laundry bag concealed under his jacket.

12.     I stopped the individual in the driver's seat and determined that he was MARQUIS AIKEN.  Law enforcement then arrested AIKEN on an open arrest warrant for unrelated sex trafficking charges pending in the Supreme Court of the State of New York, New York County.  AIKEN was holding the SUBJECT PHONE in his hand when I stopped him, and I seized the SUBJECT PHONE from AIKEN incident to arrest.

13.     Law enforcement have since determined that the Vehicle resembles a black Nissan Maxima captured on video surveillance fleeing the scene of a jewelry store robbery at 141-18 Holly Avenue in Queens, New York on December 19, 2019.  Video surveillance from inside that jewelry store depicts one of the robbers wearing a mask similar to the one worn by LEONARD in Dover, New Hampshire on October 21, 2019.

14.     Following AIKEN's arrest, law enforcement agents, including myself, advised AIKEN of his Miranda rights, and AIKEN waived his Miranda rights and agreed to speak with law enforcement.  AIKEN stated, in sum and substance and in part, that: LEONARD is his uncle; LEONARD called AIKEN on the SUBJECT PHONE early that

morning and asked AIKEN to pick up him in Queens; and LEONARD sent by text message a GPS "pin" showing his location to the SUBJECT PHONE.

15.     On March 10, 2020, the Honorable Peggy Kuo, United States Magistrate Judge, Eastern District of New York, signed a search warrant for the SUBJECT PHONE.  Law enforcement searched the SUBJECT PHONE pursuant to the search warrant.

16.     Based on that search, law enforcement found that on or about December 21, 2019 – just two days after the above-described robbery of a jewelry store in Queens on December 19, 2019 – Aiken searched on Google for "robbery in queens new york."

17.     In addition, on or about December 23, 2019, Aiken took the following photograph on the SUBJECT PHONE that shows himself holding what appears to be thousands of dollars in United States currency:



18.     Moreover, on or about January 20, 2020 – one day before LEONARD and AIKEN were apprehended near the intersection of 37th Avenue and 74th Street in Queens, New York – Aiken searched on Google for "london jewelers flushing new rok [sic]" and directions to "Karat 22 Jewelers of London, 3750 74th street # A, Flushing, NY 11372." Based on my training and experience, these internet searches suggest that AIKEN was searching for a place to rob the next day, and that he was an active participant in robberies with LEONARD and others.

19.     Historical cell-site data will allow law enforcement officers to identify whether the SUBJECT PHONE was present in the vicinity of any of the above-described robberies, as well as to identify any patterns of behavior and common locations among AIKEN, RISHER, LEONARD, and other, unidentified co-conspirators.

## TECHNICAL BACKGROUND ON HISTORICAL CELL-SITE DATA

20.     In my training and experience, I have learned that the Provider is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate

location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21.     Based on my training and experience, I know that the Provider can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as the Provider typically collect and retain cell-site data in their normal course of business.

22.     Based on my training and experience, I know that wireless providers such as the Provider typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name, address and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as the Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

23.     Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24.     I further request that the Court direct the Provider to disclose to the government any information described in Section I of Attachment B that is within its

possession, custody or control. Because the warrant will be served on the Provider, which

will then compile the requested records at a time convenient to it, reasonable cause exists to

permit the execution of the requested warrant at any time in the day or night.

           25.    I further request that the Court order that all papers in support of this

application, including the affidavit and search warrants, be sealed until further order of the

Court. These documents discuss an ongoing criminal investigation, the full extent of which

is neither public nor known to all of the targets of the investigation. Specifically, although

RISHER and LEONARD have been apprehended, AIKEN and other co-conspirators remain

at liberty. Accordingly, there is good cause to seal these documents because their premature

disclosure may seriously jeopardize that investigation, including by giving AIKEN and other

co-conspirators an opportunity to destroy or tamper with evidence, change patterns of

behavior, notify confederates and flee from prosecution.

                                    Respectfully submitted,

                                    KIERAN KEENAGHAN
                                    Detective/Task Force Officer
                                    NYPD/ATF Joint Robbery Task Force

Subscribed and sworn to before me on _____3/19_____, 2020

_____
HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property to be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 347-791-4447 (the "SUBJECT PHONE"), that are stored at premises controlled by T-Mobile US, Inc. (the "Provider"), headquartered in Parsippany, New Jersey.

<u>ATTACHMENT B</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the SUBJECT PHONE listed in Attachment A for the time period September 1, 2019 to January 31, 2020:

a.   The following information about the customers or subscribers of the SUBJECT PHONE:

   i.   Names (including subscriber names, user names and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI") or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration IP address); and

2

       viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT PHONE, including:

       i.  The date and time of the communication, the method of the communication and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

       ii.  Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, instrumentalities, or fruits of violations of 18 U.S.C. §§ 1951 and 924(c) involving THURMEN RISHER, DARNELL LEONARD, and MARQUIS AIKEN and any other individuals involved in robberies with one or more of the foregoing individuals.